HONG KONG & S. BANKING CORP. *v.* EMANUEL *et al.*

(*Supreme Court, General Term, First Department.* February 11, 1891.)

1. ACTION ON BILL OF EXCHANGE—LIABILITY OF INDORSER—EVIDENCE.

A bill of exchange, drawn upon M. & Co., was delivered to plaintiff bank, for advances thereon, with the shipping documents of a cargo of oil, of which one-third was owned by the maker and two-thirds by the indorser of the bill. It was expected that the bill would be paid out of the proceeds of the sale of the oil, but such proceeds proved insufficient. In an action by plaintiff against the maker and indorser for the balance unpaid, the maker testified that the shipping documents were given to plaintiff, with instructions to turn them over to M. & Co. on the arrival of the oil; but the indorser denied having made such an arrangement, or any arrangement to give M. & Co. control of the oil. *Held* that, unless he had authorized M. & Co. to dispose of the oil, their account of the sale of it was not evidence against him to show a deficiency of proceeds for payment of the bill.

2. SAME—QUESTION FOR JURY.

It was a question for the jury whether he had given such authority.

3. SAME—INSTRUCTIONS.

It was error to charge the jury that the cargo was consigned to M. & Co. for sale by an arrangement and understanding between the defendants.

Appeal from circuit court, New York county.

Action by the Hong Kong & Shanghai Banking Corporation against Albert A. Meyer and Joseph M. Emanuel and others. Defendant Emanuel appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Sol Kohn,* for appellant. *Redfield & Redfield,* (*Amasa A. Redfield,* of counsel,) for respondent.

DANIELS, J. The verdict was recovered for the amount of a balance found to be due to the plaintiff upon a bill of exchange drawn by Albert A. Meyer upon Meyer & Co., of Hiogo, in Japan, and which was afterwards indorsed by the defendant Emanuel, and delivered to the plaintiff. The bill was drawn for the sum of £6,678 19s. 6d., British currency. With its delivery to the plaintiff the shipping documents of a cargo of oil owned by the appellant and the defendant Meyer were also delivered to the bank, and out of the proceeds of the oil, which was consigned to Meyer & Co., it was expected that the draft would be paid. But evidence was given tending to prove the fact to be that the proceeds of the oil, after deducting expenses, were insufficient for that purpose, leaving the balance of $6,269.24 unpaid upon the bill. To establish the existence of this deficiency, the witness Alfred M. Townsend testified that he was the agent of the plaintiff at the city of New York, and transmitted to the appellant an account of the sale of the oil, indicating the existence of this deficiency; and that a similar account was presented by himself to the appellant, to which the latter made no other objection than that to the amount of interest charged. The appellant denied this interview; and evidence was given by the witness Albert A. Meyer to the effect that the cargo of oil was owned, one-third by himself and two-thirds by the appellant. And it was proposed by the plaintiff to read the account of the disposition of the cargo of oil as evidence to the jury. This was objected to on the part of this defendant; and the court then interrogated Mr. Meyer concerning the consent of the appellant that the shipping documents should be transferred to

the plaintiff, with instructions to turn them over to Meyer & Co., on the arrival of the ship for that firm to dispose of the oil. Upon that subject this testimony was given: "*Question.* This cargo of oil was, as I understand, shipped to Japan? *Answer.* Yes. *Q.* By the ship Sontag? *A.* Yes. *Q.* Who handed over the control of it to Meyer & Co. at Hiogo? *A.* The Hong Kong bank. *Q.* Without any direction from you or your associates? *A.* No; we gave the documents to the bank, with instructions to turn them over to Meyer & Co. upon the ship's arrival. *Q.* Were those directions given by you here? *A.* Yes. *Q.* And by the defendant here, also? *A.* That was the understanding. *Q.* Between you and the defendant Emanuel? *A.* Yes; he had a two-third interest in the cargo. *Q.* All I wanted to know was if the disposal of this cargo by the plaintiffs in Japan to Meyer & Co. was in accord with arrangements which you or your firm, and the defendant Emanuel or his firm, had arranged and agreed upon? *A.* Yes." The witness further testified that this arrangment was made by writing, which was forwarded by him to the firm of Meyer & Co., in Japan. And upon this evidence the court permitted the returns which had been received of the sale of the cargo, and showing its proceeds, to be read in evidence to the jury. In the examination of the appellant he denied having made this arrangement. His testimony was: "I never gave him"—that is, Meyer—"any writing such as he testified to. I never entered into any arrangement with the witness Meyer to give the control of these goods to Meyer & Co., in Japan." Then the question was asked: "Did you ever authorize the plaintiff to employ Meyer & Co. to have the control of these goods?" and he answered: "No, never. I first heard of any arrangement to give the control of these goods to Meyer & Co. to-day, when I heard Mr. Meyer testify to that upon the stand to-day. I never gave any writing whatever relating to the allowing or authorizing Meyer & Co. to sell that oil." This brought the fact prominently into controversy whether the appellant had authorized Meyer & Co. to dispose of the oil. If he had, then their return of the result was evidence against him; but if he had not, then it is equally true that the return was not such evidence.

In the course of the charge given to the jury they were instructed that the cargo was so consigned to Meyer & Co. for sale by an arrangement and understanding between the defendants, who were jointly interested as owners of the merchandise. To this the defendants' counsel excepted, and asked the court to charge the jury that it was a question for them, and is disputed that Meyer & Co. were selected by the defendant here. That was declined, and to that the defendants' counsel also excepted. These exceptions seem to be well founded, for, in the direction which was given to the jury, the court instructed them that the cargo had been consigned to Meyer & Co. for sale by an arrangement and understanding between the defendants, which included the appellant. This was a mistake on the part of the judge presiding at the trial, for the fact was not proved in such a manner as to permit the court to assume it and direct the jury, as that was done, that it had been established. It was, on the contrary, a fact asserted by Mr. Meyer, and denied by Mr. Emanuel; and as the admissibility of the report of sales was placed by the court upon the evidence of Meyer that this was the fact, when it was afterwards denied by Mr. Emanuel, it was for the jury alone to determine whether the fact had been proved in the case or not. By the instruction which was given and withheld, this inquiry was taken from the province of the jury, and the fact was decided by the court. If the defendant Meyer was right in this statement, then this report of the sales was admissible against the appellant. But if the latter was correct in denying the evidence of Meyer, then the report was not evidence against him. As the case was presented, the jury could very well find that the appellant had not consented to or approved of the account presented, as that was stated in the evidence of Mr. Townsend; and if they had found that fact not to be

proved, then the entire right of the plaintiff to recover this balance would stand upon the evidence of Meyer, denied as it was by the appellant. And in this state of the evidence he was entitled to have that question submitted to the jury, and if they were satisfied that he did not acquiesce in or approve of the account, and did not authorize Meyer and Co. to sell the oil, then he was entitled to a verdict in his favor; for there would be no proof in that state of the case establishing the balance claimed by the plaintiff, as it was included in the verdict of the jury. The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.